IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                                                    Case No. 3:15cr80

DQUAN LAMAR THOMAS

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant DQuan Thomas's Motion to Suppress Cell Site Location Information ("Motion to Suppress"). (ECF No. 30.) The United States filed a response in opposition. (ECF No. 37.) On August 5, 2015, the United States Court of Appeals for the Fourth Circuit issued its opinion in *United States v. Graham* ("*Graham II*"), 796 F.3d 332 (4th Cir. 2015). This Court ordered further briefing addressing *Graham*'s impact on the Motion to Suppress. (ECF No. 39.) Both the United States and Thomas filed supplemental briefing. (ECF Nos. 40, 43.) Accordingly, this matter is ripe for adjudication. For the following reasons, the Court will deny the Motion to Suppress.

## I. Factual and Procedural Background

### A.    Factual and Procedural Background

Four armed robberies, two of which involved carjackings, taking place between November 11, 2014 and February 9, 2015, underpin the criminal charges at issue in this case. Thomas appears before this Court indicted for, among other things, conspiracy to commit, and

aid and abet, robbery by threats or violence in violation of 18 U.S.C. §§ 1951(a) and 2[1] on or

about November 11, 2014. (ECF No. 11.) A criminal complaint alleging conspiracy to commit

robbery by threats or violence, or a so-called Hobbs Act robbery, previously stood before the

Court. (ECF No. 1.) This motion challenges an investigative technique pursuant to statute and

approved by the United States Magistrate Judge ("Magistrate Judge") before Thomas faced any

formal charges: an application, as part of an investigation into conspiracy to commit a Hobbs

Act robbery, for an order under 18 U.S.C. § 2703(d)[2] seeking cell-site location information

("CSLI") as to Thomas's phone. (*See* Application of the United States for an Order Pursuant to

18 U.S.C. § 2703(d) (the "Application"), Not. Filing Add'l Exs., Ex. 1, at 2–10, ECF No. 38-1.)

---

[1] 18 U.S.C. § 1951(a) states in full:

> **(a)** Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a).

   18 U.S.C. § 2(a) states: "**(a)** Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a).

[2] 18 U.S.C. § 2703(d) states, in pertinent part:

> **(d) Requirements for court order.** A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation.

18 U.S.C. § 2703(d).

## 1. **Criminal Conduct Alleged**

The United States contends that,[3] on November 11, 2014, three men in Richmond, Virginia carjacked a van owned by a cigarette distributor. The van arrived at a cigarette wholesaler at 12:15 p.m. The driver purchased over $ 31,000 of cigarettes. Surveillance footage showed that a maroon Ford SUV missing a right front hubcap and occupied by three people followed the van as it drove away. The SUV then rear-ended the van. The van driver exited the vehicle and was approached by one of the SUV occupants armed with a handgun.

On November 25, 2014, three people carjacked a van driven by an employee of a cigarette distributor. The driver of the van had just purchased over $100,000 worth of cigarettes at a Costco. After the van driver had loaded the cigarettes, a gold sedan occupied by three individuals stopped near the van. One of the sedan occupants, brandishing a handgun, approached the van, telling the driver to exit the van. Another suspect escaped in the van with the $100,000 in cigarettes. The other two subjects left in the gold sedan.

On January 7, 2015, two alleged victims, including one man later named as conspirator Iham Alhajaly, were loading cigarettes into a van following a business transaction near a storage unit. Three males approached the purported victims and instructed them to lie on the ground. One of the men carried a handgun. Two of the suspects loaded the remaining cigarettes into the van, ordered Alhajaly and the victim into the storage unit, and fled in the van and a light-colored

---

[3] Neither Thomas nor the United States requested a hearing on the Motion to Suppress. The Court draws the factual background from the limited information in the Criminal Complaint, the Indictment, the March 19, 2015 Order issued by the Magistrate Judge pursuant to 18 U.S.C. § 2703(d) (the "§ 2703(d) Order") (Not. Filing Add'l Exs. Ex. 1, at 11–12, ECF No. 38-1), and the Application (*id.* at 2–10).

The Criminal Complaint and the Application do not consistently provide the full names of the conspirators. The record here otherwise reveals their full names.

Mercedes-Benz with 30-day license plates. The suspects seized approximately $90,000 worth of cigarettes and $25,000 in cash.

Earlier that same day, law enforcement conducted a field interview with a man found sitting in a 1999 Mercedes-Benz with 30-day license plates. He told the officers his name, Derrell Walker, and gave them his address. A check with the Department of Motor Vehicles showed that the Mercedes-Benz was registered to Shante Page at the same address Walker had given them. On January 10, 2015, officers responded to Walker and Page's address. A maroon Ford Explorer SUV with a missing right front hubcap and minor front end damage sat parked directly in front of the home. A Department of Motor Vehicles check showed that the SUV was registered to Page. On January 11, 2015, officers returned to Walker and Page's address. This time, they observed a light gray or silver Mercedes-Benz that matched the vehicle on the surveillance footage from the January 7, 2015 robbery.

On February 9, 2015, Walker, Page, and an unidentified woman met two other men named Mickel Marzouk and Mohamed El Shamy in a McDonald's parking lot.[4] Marzouk drove a Chevrolet Silverado. El Shamy drove a van registered to him at "Waverly Tobacco Wholeseal [sic]." (Application ¶ 12.) Walker and Marzouk joined El Shamy in the van. At approximately 2:00 p.m., law enforcement saw the van drive through a storage facility in Henrico, Virginia, circle a particular storage unit, and return to the McDonald's. Shortly thereafter, law enforcement tracked the maroon Ford SUV, driven by Walker and accompanied by two individuals, to a location near the Henrico storage facility. At approximately 5:00 p.m., the SUV entered the storage facility property.

---

[4] Law enforcement were able to track Walker based on GPS tracking warrants not at issue in this Motion.

4

Shortly after 5:00 p.m. on February 9, 2015, two people later identified as Q.C., a victim, and Marzouk, a conspirator, were conducting a cigarette transaction at the Henrico storage unit. Two males, one of whom carried a firearm, exited a maroon Ford SUV and approached Q.C. and Marzouk. The men, later known to be Walker and Karon Grant, demanded cell phones, money, and cigarettes from Q.C. and Marzouk. Walker and Grant then drove away in the Ford SUV and Marzouk's Chevrolet Silverado with approximately $35,000 in cash and $18,000 worth of cigarettes. Law enforcement tracked the Ford SUV using GPS. A high speed chase of the Ford SUV occurred, followed by a crash, after which police apprehended Grant.

Further investigation confirmed other details about each of the robberies. While some participants on given days were identified, law enforcement did not confirm the identity of each participant during all robbery events. For instance, the investigation clearly implicated Thomas's participation on November 11. Thomas's phone number was identified. However, three participants remained unknown as to the event on November 25, 2014. (*See* Application ¶¶ 4, 23.) One man who abetted during the January 7, 2015 robbery remained unidentified. (*See* Application ¶¶ 6, 20.) Finally, not all of the identities of the active conspirators during the February 9 event became evident during the initial stages of the investigation. (*See* Application ¶¶ 12–15, 19.)

## 2. Challenged Investigative Measures Undertaken

On March 18, 2015, an Assistant United States Attorney compiled the above information into the nine-page Application and presented it to the Magistrate Judge. Pursuant to the Stored Communications Act ("SCA"),[5] the Application requested CSLI[6] for Thomas's cell phone from

---

[5] "The SCA 'provid[es] an avenue for law enforcement entities to compel a provider of electronic communication services to disclose the contents and records of electronic communications.'" *Graham II*, 796 F.3d at 343 (quoting *In re Application of U.S. for an Order*

October 1, 2014 to February 10, 2015. On March 19, 2015, the Magistrate Judge found that the

Assistant United States Attorney "offered specific and articulable facts showing that there are

reasonable grounds to believe that the records and other information sought are relevant and

material to an ongoing criminal investigation" as required by § 2703(d). (§ 2703(d) Order 1.)

The Magistrate Judge issued the § 2703(d) Order authorizing Thomas's cell service provider to

"disclose transactional and stored records relating to historical cell-site information, including

tower location and sector/face information if available, related to the use of a cellular telephone

assigned" to Thomas. (*Id.*)

Officers determined that Thomas had been in contact with Walker approximately 20

times the morning of the November 11, 2014 robbery. On March 25, 2015, a special agent with

the Federal Bureau of Investigation received Thomas's CSLI for the ordered dates. The CSLI

demonstrated that Thomas's phone had been in the vicinity of the same cellular tower as

Walker's cell phone on the morning of the November 11, 2014 robbery. Both phones registered

with the cellular tower near the robbery site at the Costco by mid-morning. The next time

---

*Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 287 (4th Cir. 2013)) (citing 18 U.S.C.
§§ 2701–2711). The SCA, treating subscriber records (or other non-content information)
differently from the content of communications, outlines the procedures an agency must follow
to obtain information from a service provider. *Id.* at 343–44 (citing *United States v. Clenney*,
631 F. 3d 658, 666 (4th Cir. 2011)).

[6] Historical CSLI shows "which cellular towers were used to route a particular call."
*United States v. Graham* ("*Graham I*"), 846 F. Supp. 2d 384, 392 (D. Md. 2012), *aff'd*, 846
F.2d 384 (4th Cir. 2015). Depending on the number of towers in an area, the precision of the
location information can vary.
  In *Graham II*, the majority characterized this information as a "continuing stream of
increasingly precise information about the locations and movements of network users." *Graham
II*, 796 F.3d at 359–60. In relative contrast, the dissent raised some doubts as to the precision of
CSLI, but found the accuracy irrelevant for a Fourth Amendment analysis. *Id.* at 387 n.12
(Motz, J., dissenting) (noting that the area in which a person could be located translates to "more
than four square miles"); *see also United States v. Davis*, 785 F.3d 498, 515 (11th Cir. 2015)
(distinguishing precision of historical CSLI from real-time GPS tracking).

Thomas's phone registered with a cellular tower was half an hour after the robbery, when it again connected with the same tower as Walker's phone.

### B.   Procedural Background

On March 30, 2015, the United States filed a Criminal Complaint against Thomas, alleging that he violated 18 U.S.C. § 1951(a).  (ECF No. 1.)  On May 5, 2015, a grand jury returned an indictment charging Thomas with four counts.  Count 1 alleges that Thomas knowingly and willfully and by force committed robbery affecting commerce, pursuant to 18 U.S.C. §§ 1951(a) & 2.[7]  (Indictment 1–2, ECF No. 11.)

Thomas filed a Motion to Suppress, arguing this Court must suppress the CSLI the United States obtained via the March 19, 2015 § 2703(d) Order.  (ECF No. 30.)  Thomas maintains that law enforcement's procurement of his CSLI through the § 2703(d) Order violated his Fourth Amendment[8] rights.

---

[7] All counts relate to the November 11, 2014 robbery.  Count 2 charges Thomas with carjacking, in violation of 18 U.S.C. §§ 2119 and 2.  Count 3 accuses Thomas of possessing a firearm in furtherance of a crime of violence, under 18 U.S.C. §§ 924(c) and 2.  And, Count 4 alleges that Thomas possessed a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

[8] The Fourth Amendment states in full:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

## II. Applicable Law: the Fourth Amendment and the Exclusionary Doctrine

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. "[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (citation omitted). When law enforcement engages in a search or seizure under the Fourth Amendment, "reasonableness generally requires the obtaining of a judicial warrant" unless some exception to the warrant requirement applies. *Id.* (citation omitted).

In order to deter future unconstitutional Fourth Amendment searches and seizures, courts created the "exclusionary rule." *United States v. Leon*, 468 U.S. 897, 906 (1984). The exclusionary rule "generally prohibits the introduction at criminal trial of evidence obtained in violation of a defendant's Fourth Amendment rights." *United States v. Stephens*, 764 F.3d 327, 335 (4th Cir. 2014). The exclusionary rule does not derive directly from the Fourth Amendment. *Leon*, 468 U.S. at 906. Instead, the rule "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *Leon*, 468 U.S. at 906 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). Accordingly, "courts apply the rule to exclude evidence only where the benefits of deterrence outweigh the costs of suppression." *Graham II*, 796 F.3d at 361.

The Fourth Circuit instructs courts considering a suppression motion to focus on "culpable police conduct and not on the actions of legislators and judicial officers." *Graham II*, 796 F.3d at 361. "Where law enforcement acts 'with an objectively reasonable good-faith belief that their conduct is lawful,' there is no need for deterrence sufficient to justify the exclusion of reliable evidence." *Id.* (quoting *Davis v. United States*, 131 S. Ct. 2419, 2427 (2011)); *accord Leon*, 468 U.S. at 919–20. Law enforcement may rely on "(1) an enacted statute, unless that

8

statute is clearly unconstitutional[;] (2) a search warrant or other court order issued by a neutral

magistrate, unless issuance of the order is clearly defective[;] or[,] (3) binding appellate

precedent." *Graham II*, 796 F.3d at 361–62 (citations omitted).   Law enforcement cannot be

found to have acted with "objective reasonableness" in circumstances in which:

> (1) the magistrate [judge] . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;
>
> (2) the magistrate [judge] acted as a rubber stamp for the officers and so wholly abandoned his detached and neutral judicial role;
>
> (3) an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or[,]
>
> (4) a warrant [is] so facially deficient—*i.e.,* in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (quoting *Leon*, 468 U.S. at 923)

(internal quotation marks omitted).

The fourth exception,[9] invoked by Thomas here, applies only in "narrow" circumstances.

*Graham I*, 846 F. Supp. 2d at 406 (quoting *Messerschmidt v. Millender*, 565 U.S. __, 132 S. Ct.

1235, 1246 (2012)).   "The threshold for establishing [facial deficiency] is a high one, and it

should be." *Id.* (quoting *Messerschmidt*, 565 U.S. at __, 132 S. Ct. at 1245).   "[T]he specificity

required for a warrant varies with the circumstances within a 'practical margin of flexibility.'"

*United States v. Shilling*, 826 F.2d 1365, 1369 (4th Cir. 1987) (quoting *United States v. Torch*,

609 F.2d 1088, 1090 (4th Cir. 1979)); *see United States v. Abboud*, 438 F.3d 554, 575 (6th Cir.

2006) ("The degree of specificity required [in a warrant] depends on the crime involved and the

types of items sought." (citation omitted)).

---

[9] Thomas does not argue that the first three exceptions apply, nor can he.

9

### III. Analysis

Following the Fourth Circuit's holding in *Graham II* that officers must obtain a warrant before acquiring long-term historical CSLI, this Court must find that the CSLI obtained through the § 2703(d) Order violated Thomas's Fourth Amendment rights. However, suppression does not inevitably flow from this determination. Here, the good-faith doctrine applies. The Court will not suppress the CSLI.

### A. Obtaining CSLI for a Lengthy Duration of Time Constitutes a Search and Requires Probable Cause Within the Fourth Circuit

In *Graham II*, the Fourth Circuit held that the government's procurement of 221 days of historical CSLI pursuant to a § 2703(d) order was an unreasonable search under the Fourth Amendment. *Graham II*, 796 F.3d at 343–45. From January 17, 2011 to February 5, 2011, a string of six robberies occurred in the Baltimore, Maryland area. *Id.* at 339–40. Immediately after the February 5 robbery, law enforcement apprehended Graham and another individual named Jordan in the getaway truck. *Id.* at 340. After the arrest, officers began investigating whether Graham and Jordan were connected with the previous five robberies. *Id.* When executing search warrants on the truck, the officers found cell phones that matched Graham's and Jordan's disclosed phone numbers. *Id.*

Law enforcement then applied for an order from a United States Magistrate Judge pursuant to the SCA to obtain CSLI for both Graham and Jordan. *Id.* at 341. The first application sought CSLI for four disconnected periods of a few days, totaling 14 days. *Graham I*, 846 F. Supp. 2d at 386. A later application sought CSLI from July 1, 2010 through February 6, 2011, a period of 221 days. *Graham II*, 796 F.3d at 341. The magistrate judge granted both applications and issued § 2703(d) orders. *Id.* The United States subsequently indicted Graham and Jordan on various charges, including robbery affecting commerce, in

10

violation of 18 U.S.C. § 1951(a), and aiding and abetting others to commit robbery affecting commerce, in violation of 18 U.S.C. §§ 2 and 1951(a). *Id.*

Graham and Jordan filed a motion to suppress the CSLI obtained through the second § 2703(d) order as an unconstitutional Fourth Amendment search. *Id.* The United States District Court for the District of Maryland denied the motion, holding that procurement of CSLI did not constitute a search under the Fourth Amendment according to existing Supreme Court and Fourth Amendment precedent.[10] *Graham I*, 846 F. Supp. 2d at 404–06. A jury found Graham and Jordan guilty of multiple counts, including robbery affecting commerce. *Graham II*, 796 F.3d at 342. The defendants appealed to the Fourth Circuit. *Id.*

The appeal produced a strong and thoughtful, but divided, opinion. Two Fourth Circuit panel members found that the "remarkable" 221-day[11] period of historical CSLI surveillance violated Graham's Fourth Amendment rights. *Id.* at 345, 347. Rejecting decisions by every circuit court to consider the matter, the majority found inapplicable the so-called third-party doctrine (that a cell user had no reasonable expectation of privacy in records held by his or her service provider), in part because the granular level of location information contained in cell service records implicated privacy concerns. The majority found that customers did not "voluntarily convey" CSLI because that location information automatically collects when the phone is not being used, including when a customer is at home or other private spaces implicating heightened privacy protections. *Id.* at 352–61. The majority opinion highlighted the

---

[10] The District of Maryland and the Fourth Circuit in the subsequent appeal extensively analyzed Fourth Amendment jurisprudence as it related to the unanswered question of whether long-term historical CSLI constitutes a search. *Graham II*, 798 F.3d at 342–61; *Graham I*, 846 F. Supp. 2d at 396–405.

[11] The majority declined to set a "bright line" as to the duration of historical CSLI that would require Fourth Amendment protection. *Graham II*, 796 F.3d at 350 n.8.

11

ubiquity of cell phones and the quick manner in which their technological powers grow. In her concurrence, a majority member noted: "[a]s the march of technological progress continues to advance upon our zone of privacy, each step forward should be met with considered judgement that errs on the side of protecting privacy and accounting for the practical realities of modern life." *Id.* at 378 (Thacker, J., concurring).

A dissent ensued. Noting not just the disconnect between the *Graham II* decision and other circuit courts, but also with the Supreme Court that has, among other things, "twice rejected the majority's 'ubiquitous' and 'essential' theory," the dissenting judge found that *stare decisis* plainly allowed the warrantless collection of the CSLI information on review in that Court. *Graham II*, 796 F.3d at 385 (Motz, J., dissenting). Rejecting the majority's suggestion that the precision of the information made the long-term CSLI veer toward collecting content, the dissent found that, in the absence of a "clean slate" as to CSLI issues, no court could find that the collection of large quantities of location information always implicates privacy expectations, despite the appeal of such a notion. *Id.* at 387–88. The dissent left it to the Supreme Court to revisit the "contours of the third-party doctrine" that bound the Fourth Circuit, *id.* at 389, and declined the opportunity to "beat the Supreme Court to the punch." *Id.* at 390.

Petitions to rehear this case en banc pend. (*United States v. Graham*, Nos. 12-4659, -4825 (4th Cir.), ECF Nos. 179, 181, 183.) Nonetheless, this Court has before it a rejection by the Fourth Circuit that the third-party exception to the warrant requirement applies. The majority found that obtaining long-term CSLI without a warrant supported by probable cause violates an individual's Fourth Amendment rights. *Graham II*, 796 F.3d at 349 n.6, 350, 355–56.

*Graham* binds this Court. This Court must apply the Fourth Circuit's holding that the "government conducts a search under the Fourth Amendment when it obtains and inspects a cell

12

phone user's historical CSLI for an extended period of time." *Id*. at 344–45. A Fourth Amendment search requires a warrant supported by probable cause unless some exception applies. *Id*. at 344. The United States does not argue that any exception to the warrant requirement applies in Thomas's case, nor did it secure a warrant here. Accordingly, "the government's warrantless procurement of the CSLI was an unreasonable search in violation of [Thomas's] Fourth Amendment rights." *Id*. at 338. Because the Fourth Circuit's *Graham II* holding constrains, this Court need not address the complicated history of potentially related cases, nor need it find specifically whether 133 days crosses a "bright line" duration rule. Despite what appears to be ample evidence for probable cause in the record below, this Court may assume without deciding that no probable cause existed. *Bynum*, 293 F.3d at 194. The Court turns to a good faith analysis. *Id*.

**B.     Suppression Is Not Appropriate Because the Officers Reasonably Relied on the Magistrate Judge's § 2703(d) Order and Acted in Good Faith**

Most pertinent to this Motion to Suppress is that the entire *Graham II* panel ultimately affirmed the denial of the motion to suppress, finding that law enforcement reasonably relied in good faith on the procedures outlined in the SCA and the orders issued by a United States Magistrate Judge. *Id*. at 363. Like the District of Maryland and the Fourth Circuit in *Graham*, this Court will not suppress the CSLI because law enforcement obtained the data in good faith. *Graham II*, 796 F.3d at 361–63; *Graham I*, 846 F. Supp. 3d at 405–06. In obtaining the CSLI, the officers reasonably relied on a federal statute (then unchallenged within the Fourth Circuit), orders issued by a neutral and detached United States Magistrate Judge, and the inherent reasonableness of the request due to the facts of the case.

### 1.   The Officers Relied in Good Faith on a Lawfully Enacted Federal Statute

First, the officers here relied in good faith on 18 U.S.C. § 2703, a statute lawfully enacted by Congress. At the time of the Application, § 2703 also had not been found, in binding appellate precedent, to violate the Constitution. *Cf. Graham II*, 796 F.3d at 361 n.23 ("After today's holding, the government will need to secure a warrant for [long-term CSLI].") "Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law." *Illinois v. Krull*, 480 U.S. 340, 349–50 (1987). 18 U.S.C. § 2703(d) is not "clearly unconstitutional." *Id.* Indeed, a reliance on legislation in the dynamic technological world is particularly well-placed.[12] *United States v. Jones*, 132 S. Ct. 945, 964 (2012) (Alito, J., concurring) ("In circumstances involving dramatic technological change, the best solution to privacy concerns may be legislative."). Further, when law enforcement executed the § 2703(d) Order, no binding precedent existed stating that long-term historical CSLI required a warrant supported by probable cause. Nearly the exact opposite was true.

Thus far, the Supreme Court has explicitly declined to rule on whether obtaining long-term real-time or historical CSLI constitutes a Fourth Amendment search. *See Riley*, 134 S. Ct. at 2489 n.1 ("[T]hese cases do not implicate the question whether the collection or inspection of aggregated digital information amounts to a search under other circumstances."); *Jones*, 132 S. Ct. at 953–54 ("It may be that [four weeks of surveillance] through electronic means, without an accompanying trespass, is an unconstitutional invasion of privacy, but the present case does not require us to answer that question.").

---

[12] Congress has considered amendments to § 2703 as recently as February 2015. *See, e.g.*, S. 356; H.R. 283; H.R. 699, 114th Cong. (2015). While no court can consider amendments not adopted, none of the proposed amendments to § 2703 proposed modification to subsection § 2703(d), by adding a warrant requirement or any other change.

Given the recent decision in *Graham II*, federal appellate courts now differ as to whether the collection of CSLI constitutes a Fourth Amendment search requiring a warrant supported by probable cause. *See Graham II*, 796 F.3d at 380–81 (Motz, J., dissenting). But any circuit split occurred just this summer, months after the CSLI was collected here. *Compare Graham II*, 796 F.3d at 338, *with Davis*, 785 F.3d at 513 (holding that the government's use of a § 2703(d) order to obtain 67 days of historical CSLI did not constitute a search and was not a violation of the Fourth Amendment); *In re Application of the United States of America for Historical Cell Site Data*, 724 F.3d 600, 615 (5th Cir. 2013) (finding that the lower standard of "specific and articulable facts" standard required under a § 2703(d) order used to procure 60 days of historical CSLI was not per se unconstitutional); *United States v. Skinner*, 690 F.3d 772, 777 (6th Cir. 2012) (holding that the use of a § 2703(d) order to acquire three days of real-time CSLI on a voluntarily procured pay-as-you-go cell phone was not a search under the Fourth Amendment because it did not violate the defendant's reasonable expectation of privacy); *and In the Matter of the Application of the United States of America for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to the Gov't*, 620 F.3d 304, 313 (3d Cir. 2010) (ruling that CSLI may be obtained through a § 2703(d) order without requiring probable cause). Importantly, the Fourth Circuit has expressed serious doubts about a narrow view that reasonable reliance may stem only from binding precedent. At least one decision suggests that an officer might reasonably look to extant, nonbinding precedent when binding precedent does not exist. *See Stephens*, 764 F.3d at 336–37.

In Thomas's case, law enforcement appropriately relied on a validly enacted federal statute that was not "clearly unconstitutional" and had not yet been ruled unconstitutional by binding appellate precedent. *Krull*, 480 U.S. at 350. The near unanimity of cases supporting the

use of the § 2703(d) Order (and not a warrant) at the time the Application was filed suggests the utmost good faith by the officers. Accordingly, the law enforcement officers acted in good faith when they "relied on the procedures established in the SCA," including when the Assistant United States Attorney applied for and obtained the § 2703(d) Order. *Graham II*, 796 F.3d at 362.

### 2.    The Officers Acted in Good Faith on an Order Issued by the Neutral and Detached United States Magistrate Judge

Second, the officers in Thomas's case acted in good faith by relying on a § 2703(d) order issued by the neutral and detached Magistrate Judge. The record does not indicate that the affidavit contained false or misleading information. *See Leon*, 468 U.S. at 923. No evidence exists that the Magistrate Judge acted as a mere "rubber stamp" in approving a "bare bones" affidavit. *See Bynum*, 293 F.3d at 197. The Magistrate Judge found that the nine-page application "offered specific and articulable facts showing that there are reasonable grounds to believe that the records and other information sough are relevant and material to an ongoing criminal investigation" as required by the SCA. (§ 2703(d) Order 1.) Accordingly, the Magistrate Judge "applied the correct standard under the [SCA]" and appropriately issued the § 2703(d) Order. *Graham I*, 846 F. Supp. 2d at 406. Law enforcement was entitled to rely on the Magistrate Judge's order. *Graham II*, 796 F.3d at 363.

### 3.    The § 2703(d) Order Was Not So Facially Deficient that the Officers Could Not Have Reasonably Presumed It Valid

Finally, the § 2703(d) Order was not "overly broad" or "so facially deficient" that the executing officers could not have reasonably presumed it to be valid under the circumstances of

this case.[13] *Bynum*, 293 F.3d at 195. The officers could rely in good faith on the § 2703(d)

Order because the Order reasonably limited itself to approximately six weeks before, and one

day after, the string of robberies under investigation. This time span was reasonable generally

and as applied to Thomas specifically.

The investigation involved a conspiracy from the outset; each event had more than one

participant. Obtaining CSLI for a period of time prior to the first robbery would very likely lead

to "relevant and material" evidence regarding the conspirators' communications arranging the

criminal conspiracy itself. 18 U.S.C. § 2703(d); *see Abboud*, 438 F.3d at 576 n.7. Like the

§ 2703(d) order in *Graham*, the § 2703(d) Order here sought CSLI for a period of time prior to

the first robbery. *See Graham II*, 796 F.3d at 338–40. Unlike the order in *Graham*, which

granted law enforcement access to CSLI beginning *six months* prior to the first robbery, the

§ 2703(d) Order in the case here sought CSLI for only a little over one month before the

---

[13] The nonbinding precedent cited by Thomas in support of his argument that the § 2703(d) Order is facially deficient for lack of particularity does not persuade the Court in its analysis. Among other factual distinctions, the cases he cites largely deal with warrants or orders in which very little or no limitation at all was placed on the searches. *See, e.g., United States v. Lazar*, 604 F.3d 230, 238–39 (6th Cir. 2010) (finding that the seizure of all non-patient files without *any* limitation as to specific patients, transactions, or time frame was unconstitutionally broad); *Abboud*, 438 F.3d at 576 (ruling that a search warrant authorizing a search for a six-year time frame was overly broad when criminal behavior only occurred for a three-month period); *United States v. Leary*, 846 F.2d 592, 601 n.15 (10th Cir. 1988) (noting that the general warrant lacked sufficient particularity due to the "absence of any limiting features"); *United States v. Abrams*, 615 F.2d 541, 543 (1st Cir. 1980) ("The officers' discretion was unfettered[;] there is no limitation as to time[;] and[,] there is no description as to what specific records are to be seized."); *United States v. Winn*, 79 F. Supp. 3d 904, 918–22 (S.D. Ill. 2015) (holding search warrant for disorderly conduct overbroad because it functionally sought all the content from defendant's phone with no time frame or other limitation after he had been observed taking pictures of minors on only one specific date).

November 11, 2014 robbery.[14] The time periods between each robbery could also reasonably

contain relevant and material evidence of the conspiracy. *Cf. United States v. White*, 519 F.

App'x 797, 801–02 (4th Cir. 2013) ("This Court has previously recognized that '[w]hen law

enforcement officials are confronted with large, far-flung and on-going criminal activity

involving multiple parties, they are afforded greater latitude in conducting wiretaps.'" (quoting

*United States v. Clerkley*, 556 F.2d 709, 716 (4th Cir. 1977))). Accordingly, a time period from

six weeks prior to the first armed robbery to one day after the last robbery, for a total of 133

days, was sufficiently particular under these circumstances.

The time frame was also reasonable and sufficiently particular as it related to Thomas

specifically. First, Thomas always has been investigated for, among other offenses, conspiracy

to commit robbery by threats or violence, which contemplates coordinated criminal conduct. The

Application, then, reasonably sought information about a conspiracy Thomas was alleged to have

participated in, at the very least, during the first robbery. Black letter law could make him liable

for foreseeable conduct in furtherance of the conspiracy after that date, even if he did not

participate directly in the subsequent robberies. *See Graham II*, 796 F.3d at 375. The CLSI

sought information relevant and material to the United States's ongoing criminal investigation of

his association and conspiracy with the other participants. *See id.* at 375–76; *White*, 519 F.

App'x at 801–02.

Second, the time frame of the § 2703(d) Order was sufficiently particular as to Thomas

based on the facts sworn in the Application. In short, some participants in the subsequent three

robberies, at the time of the application, remained unidentified. Importantly, nothing in the

---

[14] Approximately six weeks separated the second November 25, 2015 and the third January 7, 2015 robberies. Certainly an investigation of a planning period of approximately six weeks before the first robbery does not suggest unreasonableness.

Application indicates that Thomas *only* participated in the November 11, 2014 robbery. Thus, not only could Thomas be linked to all four robberies through his conspiracy charge, the Application demonstrates that he could have directly participated in each robbery as well. While no party currently suggests *now* that Thomas actively joined subsequent robberies, the § 2703(d) Order was not overly broad *at the time* in authorizing law enforcement to obtain Thomas's CSLI for the relevant 133 days. Indeed, it served the important investigative purpose of either potentially linking Thomas to subsequent events, or distancing him from direct involvement in them. Accordingly, Thomas does not meet the "high" threshold of showing that the § 2703(d) Order was so facially deficient that a well-trained officer could not have relied upon it. *Graham I*, 846 F. Supp. 2d at 406 (citation omitted).

### C.   The Officers Acted in Good Faith Because a Reasonably Well Trained Officer Would Not Have Known that the Search Was Illegal

In making a good faith inquiry, the Court must consider, above all, "the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all the circumstances." *Stephens*, 764 F.3d at 336; *see United States v. Legg*, 18 F.3d 240, 243 n.1 (4th Cir. 1994). Here, a reasonably well-trained officer would not have known that obtaining 133 days of historical CSLI through a § 2703(d) order instead of a warrant was illegal in light of all the circumstances.

The Court notes that, in Thomas's case, law enforcement "did most everything right." *Bynum*, 293 F.3d at 200 (King, J., concurring). The officers engaged in months of investigation of an extensive armed robbery conspiracy involving at least seven people. An Assistant United States Attorney prepared a nine-page application in accordance with § 2703(d), a federal statute then presumed constitutionally valid within the Fourth Circuit. The prosecutor appropriately presented the application to a United States Magistrate Judge. The neutral and detached

19

Magistrate Judge considered the application, made the appropriate statutory finding, and issued a court order.  Finally, law enforcement complied with the terms of the § 2703(d) Order.  Because the officers acted in good faith, suppression does not provide a proper remedy in Thomas's case. The Court will deny the Motion to Suppress.

### III.  Conclusion

For the foregoing reasons, the Court will deny Thomas's Motion to Suppress. (ECF No. 30.)

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 10-13-15

20